**SIGNED THIS: July 24, 2006**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GILBERT L. DEALEY, JR. and | ) | |
| COLLEEN J. DEALEY, | ) | No. 05-80573 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| PATRICIA THREET, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 05-8125 |
| | ) | |
| GILBERT L. DEALEY, JR. and | ) | |
| COLLEEN J. DEALEY, | ) | |
| Defendants. | ) | |

**O P I N I O N**

This matter is before the Court for decision after trial on the Complaint filed by Patricia Threet (THREET) against Gilbert and Colleen Dealey (individually, GILBERT and COLLEEN; jointly, the DEBTORS), concerning incomplete and defective construction work performed on THREET'S property. THREET seeks a determination of nondischargeability

under 11 U.S.C. § 523(a)(2)(A), (2)(B) or (4) for the amount she paid GILBERT under the construction contracts.[1]

THREET had sued the DEBTORS prepetition in state court for fraudulent misrepresentation, fraudulent concealment and for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. After modification of the automatic stay, the suit proceeded and a default judgment was entered against the DEBTORS. In a written opinion entered January 25, 2006, this Court ruled that the judgment should not be accorded any issue preclusive effect in this adversary proceeding.

The only witnesses to testify at the bankruptcy court trial were THREET and Frank Genusa (GENUSA), owner of PM Construction Company, a sole proprietorship. THREET owns her own home. One Saturday, three men came to the door soliciting yard work, one of whom was GILBERT. He represented that he was a "construction engineer" and gave her a business card with his name printed under "P.M. Construction." GILBERT told THREET that he owned a construction company with another person.

THREET described work that she wanted done and GILBERT drew up a proposal. The Proposal was written on a preprinted form identifying "PM Construction & Crafts, An Illinois Corporation" along with a Canton, Illinois, address for the business. It described a retaining wall to be built along a portion of THREET'S backyard for a price of $17,500. GILBERT signed the proposal on behalf of PM Construction as "Partner." The payment terms were 25% upon acceptance, 25% after excavation, with the balance due upon completion.

---

[1] The Complaint does not cite any particular section of the Bankruptcy Code. However, in her pretrial statement, THREET asserted that her action was based on these three Code sections.

Contrary to the written payment terms, GILBERT told THREET that he needed half the contract price up front before starting the job. She paid him $5,000 on July 28, 2004, and $3,750 on August 9, 2004. After receiving those payments, GILBERT told THREET he needed more money to purchase materials. She paid an additional $5,000 on September 2, 2004, by two checks, one for $4,000 and one for $1,000. Each of the four checks was made payable to PM Construction and each was deposited into an account at Heritage Bank in Trivoli owned by GENUSA. GENUSA endorsed three of the four checks. The fourth check was deposited without endorsement.

On September 10, 2004, THREET entered into a second contract for construction of a wall along her driveway at a cost of $4,995. Like the first contract, the second one was also prepared by GILBERT on the same form of "Proposal" under the letterhead of PM Construction & Crafts. It provided for a deposit of $2,000, with the balance due upon completion. THREET paid the deposit by check dated 9-18-04 payable to PM Construction. The check was deposited without endorsement into the same account at Heritage Bank.

The backyard wall was started, but not completed. The driveway wall was never started. The backyard wall, a concrete block and mortar structure, developed cracks and loss of structural integrity. In July 2005, THREET obtained a different contractor's estimate that the partially completed backyard wall was improperly installed and would have to be torn out and replaced at a cost of $38,700.

THREET made repeated phone calls to GILBERT in the fall of 2004 to see why the projects were not being done and learned that his cell phone service had been disconnected. In the spring of 2005, COLLEEN called THREET demanding payment of

$3,000 that she said was still owed. Later that year, someone other than GILBERT showed up at THREET'S house and said they were there to finish the wall. She refused and told them she had contacted a lawyer.

GENUSA testified that PM Construction is a sole proprietorship owned and operated exclusively by him. GILBERT did some work for him periodically but as an independent contractor not an employee of PM Construction. He never issued business cards to GILBERT and the card GILBERT gave to THREET was printed without his knowledge or authorization. The two contracts with THREET were entered into without GENUSA'S foreknowledge or approval. GENUSA admitted, however, that he accepted and deposited THREET'S checks payable to PM Construction because GILBERT owed him money for equipment he had rented from GENUSA. GENUSA had nothing to do with the THREET contracts or work despite accepting her checks made payable to his business. GENUSA turned a blind eye to what GILBERT was doing because he wanted GILBERT to pay him by whatever means available.

THREET testified that she believed that GILBERT was a partner in PM Construction which she believed was a construction company or an engineering company. She believed she was contracting with PM Construction, not with GILBERT as an individual unaffiliated with any construction company. She acquired these beliefs from what GILBERT told her, from his business card and the form of Proposal.

The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *Matter of Harasymiw*, 895 F.2d 1170 (7th Cir. 1990). The burden of proof required to establish an exception to discharge is a preponderance of the evidence. *Grogan*

4

*v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).  In furtherance of the goal of providing a debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor." *Matter of Scarlata*, 979 F.2d 521 (7th Cir. 1992).

>Section 523(a)(2)(A),  provides as follows:
>
>>(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt–
>>* * *
>>(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by–
>>>(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).  Although, traditionally, courts limited the application of Section 523(a)(2)(A) to a traditional fraud analysis requiring a false representation by the debtor and reliance by the creditor, the cause of action has been expanded and is now more generalized.  As the Seventh Circuit instructed in *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000), actual fraud is broader than misrepresentation and encompasses "any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another."

For nondischargeability purposes, the elements of proof of a traditional cause of action for fraud involving a false representation include that: (1) debtor made a representation to creditor; (2) debtor knew at the time the representation was false; (3) debtor made the representation with intent to deceive the creditor; (4) creditor justifiably relied on the representation; and (5) creditor sustained loss or damage as a proximate cause of the false representation.  *In re Abraham,* 247 B.R. 479, 483 (Bankr.D.Kan. 2000).

Where a false representation is not present, the creditor must prove that (1) the debtor perpetrated a fraud against the creditor; (2) the debtor acted with an intent to defraud; and (3) the creditor sustained loss or damage as a proximate cause of the fraud. *McClellan v. Cantrell, supra*; *In re Lee,* 304 B.R. 344 (Bankr.N.D.Ill. 2004).

This case involves affirmative representations, so the Court will analyze the facts using the traditional elements. The representations made by GILBERT to THREET include that he was a partner in PM Construction, that he or PM Construction had expertise in engineering, that he was acting as an owner or authorized employee of PM Construction, that she was purchasing the expertise and services of PM Construction, and that the work proposed by GILBERT and accepted by THREET was adequately designed, from the standpoint of construction and engineering standards customary to the industry, to accomplish the result she desired.

The evidence at trial indisputably established that each of these representations was false and that GILBERT knew they were false at the time they were made. The evidence further supports the inference that GILBERT made the representations with the intent to deceive THREET and to trick her into entering into the contracts and into making the payments that she did. GILBERT failed to testify. In the absence of any evidence to rebut the inference, the Court accepts it as proven.

THREET testified that she actually relied on what GILBERT represented to her as the truth. The verbal representations were corroborated by the business card that GILBERT made up and his use of form proposals printed under PM Construction's letterhead. Moreover, THREET is entirely unsophisticated in matters of construction and

6

engineering. Under these circumstances, the Court determines that her reliance was justifiable.

The payments that THREET gave to GILBERT total $15,750. THREET limited her request for relief to this amount plus attorney fees. THREET has carried her burden of proof and she is entitled to judgment against GILBERT under Section 523(a)(2)(A). THREET has not carried her burden as to the alternative claims under Sections 523(a)(2)(B) and (a)(4), as no evidence was presented of a false financial statement or a fiduciary relationship, and GILBERT prevails on those claims.

The same three claims are asserted against COLLEEN. According to the evidence, the only involvement she had was in calling THREET in the spring of 2005 to demand payment on behalf of GILBERT. That sole act is far from enough to trigger any liability on her part and COLLEEN is entitled to judgment on all claims.

THREET requests that the fees charged by her lawyer for representing her in this Adversary Proceeding be added to the judgment against GILBERT. Such fees may be recoverable according to the American Rule which provides that a prevailing litigant may not collect a reasonable attorney fee from his opponent unless authorized by statute or an enforceable contract between the parties. *Matter of Sheridan,* 105 F.3d 1164, 1166 (7th Cir. 1997). THREET does not claim a statutory basis for the fee award. Instead, she relies on a provision in each of the two contracts that reads as follows: "Purchaser agrees to pay all costs of collection, including attorney's fees." The term "Purchaser" clearly refers to the party purchasing the services, in this case, THREET. Thus, the contract provision does not provide for THREET to recover fees, it provides that she will pay fees. The contracts

7

provide no basis for recovery of attorney fees by THREET.[2]  Accordingly, her claim for fees must be denied.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

### 

---

[2] In her brief, THREET waived any argument based on a theory of equitable reciprocity under Illinois law. In any event, the Court is not aware of any authority supporting the use of that theory in Illinois.